[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action, the plaintiff seeks to recover of the defendant the sum of $20,000. He claims this is due him as the balance on a written contract dated February 26, 1993, under the terms of which the plaintiff agreed to sell a luxury yacht to the defendant for $460,000. This price was subsequently changed to $474,000 by the parties, but the defendant has alleged this price increase was made unilaterally and without consideration. The defendant has also claimed damages for the plaintiff's alleged failure to deliver the boat intact, claiming over $20,000 worth of equipment furnishings were removed. Damage to the vessel is also claimed.
 I
In view of the conflicting claims as to the contract Price, this issue must he addressed first. The contract sets forth a purchase price of $460,000. The defendant claims the plaintiff raised the price to $474,000 and left him with the choice of purchasing the boat at that figure or not buying it. Not wanting CT Page 3473 to lose this boat, the defendant agreed to pay $474,000 and subsequently accepted the vessel in New York and took it to his marina in Connecticut. His counter-claim asserts a CUTPA violation against the plaintiff-seller for raising the price in this fashion and in a first count claims the price was raised without consideration.
In the court's view of this situation, the defendant-buyer cannot prevail. By agreeing to pay the extra $14,000, having the plaintiff-seller prepare the boat for delivery, accepting delivery, and then treating it as his own, the defendant has agreed to a modification of the contract price and has performed in accordance with its terms. The seller has parted with the boat in reliance on the defendant's agreement to pay and the defendant is now estoppel to rescind the contract the parties have fully performed. Despite the alleged breaches by the plaintiff in removing items from the boat, the basic contract has been performed.
There is no dispute over the fact that there is $20,000 due on the sale price of $474,000, subject of course to the defendant's counter-claim. Therefore, judgment may enter on the complaint in favor of the plaintiff in the amount of $20,000.
By virtue of this finding, the CUTPA allegation directed to the contract increment denied.
In view of the fact that this sum has been the subject of attack via the counter-claim, the $20,000 or any part of it does not become "payable" until the court acts on the defendant's claims.
Consequently, no interest will be allowed on any net award in favor of the plaintiff on the complaint.
The court also concludes that the sale was not "as is", as the plaintiff alleges. The language in the sales contract relied on for this claim was inserted by and for the benefit of the broker. As such it has no applicability to the terms of the sale, per se.
 II
The defendant in his counter-claim lists a page full of items he claims were either missing from the boat when he inspected it, CT Page 3474 or represent expenditures he had to make to get the boat released from the plaintiff ship-yard.
A. Three items in particular involve the most substantial monetary claims. The defendant seeks $5,300 to replace a barrel chair and coffee table. He has not replaced them, but relies on an estimate he obtained from an interior designer who was provided with details of the area in which they were purportedly located when the defendant first saw the boat. The plaintiff denies they ever existed. Unfortunately, the defendant-buyer failed to make an inventory of the personalty and fixtures on the vessel when he first saw it.
The claim for these two items must be denied because even if the defendant were given the benefit of the doubt as to their existence and subsequent removal, the court has no evidence of the reasonable value of the items. There is no evidence of age, condition, quality, or even size. The "estimate" appears to be a "ball park" guess at best.
B. The other major item involves a VHF SB radio. The plaintiff denies there ever was such an item on the boat. The defendant testified that there was an empty cabinet containing the cut strands of wire where this item had been housed and removed. Of greater significance, however, is the defendant's testimony that when he was shopping for a boat, he examined a broker's spec sheet in the possession of a broker named Irwin and bearing his letterhead. This sheet indicates a VHF SB radio as part of the boat's equipment.
When the defendant attempted to introduce this spec sheet, the plaintiff objected on hearsay grounds. The court accepted it but limited the offer, because there was no evidence linking this broker, Irwin, with plaintiff. The item was marked exhibit 3.
Upon reading the defendant's brief and its references to the trial transcript, the court finds that it was in error in limiting this offer.
An examination of the trial transcript reveals that at pages 29 and 30 the plaintiff identified Charles Irwin as a broker with whom he had listed the boat prior to the broker who effected the sale. Consequently, when the defendant relied on this item as the basis for expecting a VHF SB radio, that reliance was on a representation made by the plaintiff's agent at the time. So, CT Page 3475 when at page 57, plaintiff's counsel argued against the admission of Exhibit 3, he mis-stated the facts when he stated that the plaintiff had testified he didn't have an agreement with Irwin. The court erred too in concurring, either having forgotten or mistaken that testimony.
In light of all this evidence, the court finds the defendant was entitled to such a radio on the boat. The court is confronted with some of the same problems involved with the chair and the table. The defendant's estimate range from over $5,000 to over $7,000. The plaintiff offered a trade magazine to support a $1200 to $1500 range. The court will proceed on the side of caution and award the defendant $1350 for this item.
C. The court also finds the defendant is entitled to an award on his counter-claim for these items for the reasons noted (Reference, Exhibit C of counter-claim):
1. Paid to Ocean Yachts to obtain delivery
 Starter $803.19 Port lights 153.00
2. From photo evidence, items missing,
 Custom steering wheel 200.00 Remote spotlight 354.99 Light fixture, sconce 230.00 Anchor light, mast head light 589.91
3. From Exhibit 6A, anchor changed at plaintiff's request 346.74
4. Admitted by plaintiff to be missing, horn 285.00
5. Pursuant to sales contract,
 damaged veneer 875.00 tub removal damage 1229.58
 6. Standard equipment, missing according to defendant and reasonably anticipated to be on board or locations visible
 Spare tank 38.00 3 soap dispensers 190.80 bait freezer 573.39 CT Page 3476 Charger for tender 26.49 Charger 148.39 Flair Kit 125.00 6", 2' spot lights 100.68 Fenders 50.86 Life jackets 523.16 Hoses, lines, hooks 227.26 Oven coffee maker 63.52 Bow cushion and cover 1255.04 Sheets and towels 865.72 Total II BC 10,605.72
7. Denied, lack of evidence as to liability, lost dockage 848.00
 III
The defendant has claimed a CUTPA violation on the part of the plaintiff by virtue of his removal of the various items addressed above.
The plaintiff has simply denied anything was removed or was missing. Nevertheless, in addition to the defendant evidence, there are photographs supporting portions of his testimony.
In the face of the plaintiff's denial, the court finds Exhibit 6A to be significant. Prepared by the plaintiff boatyard, this is an invoice for repairs to the boat ordered by the plaintiff but ultimately paid by the defendant to get delivery. It also bears this notation of work done: "Install owner's anchor." The defendant testified that the anchor on the boat when he received it was not the anchor he saw on it when he inspected it. The above notation took possession, the plaintiff had the anchor changed while it was at his boatyard being made ready for delivery to the defendant.
This flagrant violation of the contract, coupled with the photos supporting the defendant, lend considerable credence to the defendant's claims as to the items he was only able to testify about himself.
It is the conclusion of the court that the plaintiff was guilty of violations of the Connecticut Unfair Trade Practices Act.
The defendant is awarded $7,000 punitive damages and $2,400 CT Page 3477 attorneys fees, for a total award of $20,005.72.
Each party may tax such costs as are appropriate.
Anthony, V. DeMayo Judge Trial Referee